IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

SHIRLEY A. MITCHELL,              }
                                  }
     Plaintiff,                   }
                                  }   CIVIL ACTION NO.
v.                                }   04-AR-0537-J
                                  }
WALKER COUNTY BOARD OF            }
EDUCATION,                        }
                                  }
     Defendant.                   }

## MEMORANDUM OPINION

Before the court is the motion for summary judgment filed by defendant, Walker County Board of Education ("Board"). The Board moves for summary judgment on all claims filed by plaintiff, Shirley A. Mitchell ("Mitchell"). Mitchell brings claims under Title VII for gender discrimination and retaliation (Count One) and for race discrimination and retaliation (Count Three). She also invokes 42 U.S.C. § 1983, claiming gender discrimination and retaliation (Count Two) and race discrimination and retaliation (Count Four). For the reasons hereinafter stated, the Board's motion for summary judgment will be granted.

## Summary Judgment Facts[1]

Mitchell, a black female, has been an employee of the Board since 1976. She has held various teaching positions, and served as assistant principal of Cordova High School for four years, from 1997 to 2001. In 2001, she was promoted to principal of Oakman Elementary School, at an annual salary of $71,754. She was interviewed for the position by Alan Trotter ("Trotter"), a white male and the Superintendent of the Walker County schools at the time. Trotter was replaced by Dr. Harvey Sanford ("Sanford"), another white male, in the fall of 2002. Sanford was Mitchell's supervisor during the remainder of her tenure as principal of Oakman.

As early as May 2002, the Oakman teachers began expressing their dissatisfaction with Mitchell. Beginning in the fall of 2002, the Board received a number of complaints from Oakman parents regarding Mitchell's administration of the school. The relationship between Mitchell and the Oakman faculty deteriorated to the point that, in February 2003, a group of teachers met to air their concerns, and presented a list of 24 specific

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the plaintiff's evidence and the legitimate inferences therefrom.

2

grievances to Mitchell. In addition, the trustees of Oakman voiced their concerns to Sanford that Mitchell was not performing satisfactorily, and, in particular, that Oakman's students' test scores declined from 2002 to 2003. Neither party makes clear what authority or official standing the "trustees" have. The court is unaware of any office of "trustee" for a public school in Alabama except at the post-secondary level.

In January 2003, Sanford met with Mitchell and asked her to consider transferring to T.S. Boyd School, another school in the Walker County system. Sanford cited the Oakman teachers' and trustees' discontent as the reasons why Mitchell could not remain in her current position. He also remarked that "[t]here are students there you can relate to," so that Mitchell should be able to improve T.S. Boyd's students' test scores, which were lower than Oakman's students' scores. Mitchell assumed Sanford's comment referred to her race based on her belief that a higher percentage of T.S. Boyd's students than Oakman's students were black. The actual percentages of blacks to whites in the two schools do not appear in the record except as hearsay.

During the 2002-03 school year, Sanford asked Mitchell for a recommendation as to which of Oakman's two non-tenured teachers should be non-renewed due to budgetary constraints. Mitchell recommended that Jennifer Tittle ("Tittle"), a white female, be fired rather than Monisha Douglas-Moore ("Douglas-Moore"), a

3

black female. However, Tittle had more seniority than Douglas-Moore, and Sanford decided to retain Tittle on that basis.

Mitchell originally resisted the transfer to T.S. Boyd, but Sanford and the Board persisted. On May 22, 2003, Mitchell received notice that she was non-renewed as principal of Oakman. All the Board members who participated in the decision to non-renew Mitchell were white. Mitchell then acquiesced in the transfer, applying for and receiving the open principal position at T.S. Boyd. Mitchell filed no complaint with the E.E.O.C. at this time. The Board hired Dennis Willingham ("Willingham"), a white male, to replace Mitchell. Willingham had worked as assistant principal of Dora High School for the four years prior to his promotion.

At T.S. Boyd, which is farther from her home than Oakman, Mitchell received a salary of $71,827 during the 2003-04 school year. In exchange, she assumed administrative control of T.S. Boyd, including a supervisory role over after-school activities such as volleyball, baseball, softball, cheerleading, and basketball. Mitchell remained employed as the principal of T.S. Boyd as of the time of her deposition in March 2005 and, for aught appearing, is still so employed.

## Analysis

**I.   Gender Discrimination and Retaliation**

Mitchell agrees that summary judgment should be granted on her gender discrimination and retaliation claims, whether brought under Title VII or under § 1983. She is correct and the said claims will be dismissed.

**II.  Race Discrimination**

The Board argues that it is entitled to summary judgment on Mitchell's remaining claims because she cannot make out a *prima facie* case of racial discrimination. To carry that *prima facie* burden, whether under Title VII or § 1983, Mitchell must show that (1) she was a member of a protected class; (2) an adverse employment action was taken against her; (3) a similarly situated employee outside of her protected class was treated more favorably; and (4) she was qualified for the benefit she did not receive. *See, e.g.*, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 & n.11 (11th Cir. 2000). The Board does not dispute that Mitchell is a member of a protected class or that she was qualified for the position of principal at Oakman. Nevertheless, viewing the record in the light most favorable to Mitchell, the Board's motion for summary judgment as to her race discrimination claims is due to be granted.

**A.   Adverse Employment Action**

The Board first asserts that Mitchell's involuntary transfer from Oakman to T.S. Boyd does not constitute an adverse employment action within the meaning of Title VII and § 1983. It is well-settled in the Eleventh Circuit that a transfer is "'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County, Georgia Bd. Of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). Under this standard, the court is unable to characterize Mitchell's transfer to T.S. Boyd as an adverse employment action. Mitchell's pay did not decline. Mitchell does not dispute that her annual pay was $71,745 at Oakman during the 2002-03 school year and $71,827 at T.S. Boyd during the 2003-04 school year. Although Mitchell claims that the incremental growth, $82, is insufficient to offset the rate of inflation over that time, she presents no evidence that her pay in 2003-04 would have been anything other than $71,745 had she remained at Oakman. Thus the court can only compare Mitchell's new salary to her old, and cannot say that Mitchell suffered a reduction in pay upon her transfer to T.S. Boyd. Likewise, Mitchell has presented no evidence to indicate that the transfer involved a reduction in prestige. While it is entirely possible that, for a variety of reasons, the principalship of T.S. Boyd could be viewed as a less prestigious position than the principalship of Oakman, Mitchell can point to no facts in the

summary judgment record to support any such inference. Mitchell additionally does not deny that her new position at T.S. Boyd brought her greater responsibilities in that she now has a supervisory role over a host of after-school activities. Mitchell's transfer does not fit within the "pay, prestige, or responsibility" rubric of *Hinson* and other precedent.

Mitchell would have the court construe the adversity requirement more liberally, allowing it to aggregate the increased travel time to work and alleged collusion on the part of the Board members to force Mitchell into a position in which she thinks she would be hard-pressed to succeed, and thus easier to terminate. The fact that she has not been terminated tends to mark this second perception as pure speculation. Neither argument is viable. As to Mitchell's increased travel time, the court finds persuasive Judge Albritton's ruling in *Baker v. Alabama Dep't of Public Safety,* 296 F. Supp. 2d 1299 (M.D. Ala. 2003). In it, the plaintiff's new place of employment was a short distance farther from his home than his old workplace, increasing his commute time and preventing him from taking lunch breaks at home. *Id.* at 1308. Judge Albritton held that these inconveniences did not amount to an adverse employment action. *Id.* Other circuits are in agreement. *See, e.g.*, *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000) (holding that a transfer to another city without a change in salary or benefits

7

is not adverse); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (holding that an increased commute and the public perception that the transfer was designed to steer the plaintiff towards retirement does not constitute an adverse employment action). The instant case is not fairly distinguishable from these cases. Construing the adversity requirement liberally in favor of Mitchell, the court cannot in good conscience find an adverse employment action on the basis of an increased commute.

   Mitchell's second and final assertion of an adverse employment action is the alleged adverse impact on her future employment. To meet her *prima facie* burden on this averment, Mitchell's "asserted impact cannot be speculative and must at least have a tangible adverse effect on [her] employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Mitchell's theory is that the Board purposely put her in a situation where she is doomed to fail because of lower test scores and alleged higher percentage of black students at T.S. Boyd. The court can find no admissible evidence in the record of a significant disparity between the comparable racial percentages in the two schools. Mitchell's E.E.O.C. complaint refers to such a disparity, but her assertion in that respect is no more than self-serving hearsay. The only evidence from which an inference of racial animosity could be drawn is the racial difference

8

between Mitchell and the Board members and the statement by Sanford that Mitchell will be better able to relate to the T.S. Boyd student body. While the court must draw all reasonable inferences in favor of Mitchell, her assertion of racial animus is patently speculative. Without more concrete evidence, any future adverse effect on Mitchell's career is entirely hypothetical. In fact, the only direct evidence in the summary judgment record militates against a conclusion of adversity: Mitchell has apparently been successful in her new position, as she ostensibly is still the principal of T.S. Boyd. The court finds no evidentiary basis upon which to conclude that the transfer was part of a deliberate plot to sabotage Mitchell's career.

The record is devoid of any evidence from which logically to infer that Mitchell suffered an adverse employment action at the hands of the Board. This failure is fatal to Mitchell's discrimination claims.

**B.   Similarly Situated Employee**

Mitchell's inability to satisfy another component of her *prima facie* burden buttresses the court's conclusion. The Board contends that its motion is due to be granted because Mitchell has not produced evidence of a comparator. To be a proper comparator, Eleventh Circuit precedent requires that Mitchell name a co-employee who is "similarly situated in all relevant

respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). That is, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* (citations omitted). Mitchell has not produced such a comparator.

Mitchell would have the court believe that Dennis Willingham is a similarly situated non-minority who received more favorable treatment, but this proposed comparison does not meet the test. Undeniably, Willingham, who is white, and Mitchell, who is black, held the same position, principal at Oakman, after serving as an assistant principal at another school. But the comparison ends there. Regardless of the validity of the faculty, trustee, and parental complaints against Mitchell, similar complaints have not been filed against Willingham. There is also no evidence in the record that Oakman's test scores have declined during Willingham's tenure. These circumstances clearly distinguish Mitchell's situation from Willingham's. Simply put, Willingham was never accused of similar infractions, so the Board's treatment of Willingham is inapposite. Without evidence of another comparator, Mitchell's *prima facie* burden has not been met.

### III. Retaliation

Mitchell must also establish a *prima facie* case to prove a retaliation claim under Title VII or § 1983. Here, she "must show

that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)). A fatal flaw in Mitchell's interference claim thus resurfaces in her retaliation cause of action. Without proof of any adverse employment action,[2] this court cannot allow the retaliation claim to proceed. It is the same alleged adverse employment action that Mitchell would tie to retaliatory conduct that she would tie to her race. Summary judgment must be granted for these reasons.

The court need not delve into the parties' arguments as to the timeliness of Mitchell's claims in light of the 90-day window for filing suit after receiving an E.E.O.C. right-to-sue letter.

**IV. Conclusion**

In accordance with the foregoing, the Board's motion for summary judgment will be granted by separate order.

DONE this 6th day of September, 2005.

---

[2] Mitchell would have the court consider the firing of Douglas-Moore to be an adverse employment action for the purposes of this analysis. While this termination would be the archetypal adverse action if Douglas-Moore brought a retaliation claim against the Board, Mitchell cannot assert that claim on Douglas-Moore's behalf.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE